UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TAREK YOUSSEF HASSAN SALEH,

                         Plaintiff,

                    -v.-

GINA PASTORE, as Brooklyn Field Office Director
U.S. Citizenship and Immigration Services; SUSAN
QUINTANA, as New York City Field Office Director
U.S. Citizenship and Immigration Services; LEE
BOWES, as Acting Field Office Director, Northeast
Region, USCIS; TRACY RENAUD, Acting Director,
USCIS; ALEJANDRO MAYORKAS, Secretary U.S.
Department of Homeland Security; CHRISTOPHER
WRAY, Director Federal Bureau of Investigation; and
MERRICK B. GARLAND, Attorney General U.S.
Department of Justice,

                         Defendants.

19 Civ. 11799 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

        Plaintiff Tarek Youssef Hassan Saleh, proceeding *pro se*, brings this

action seeking an order (i) compelling United States Citizenship and

Immigration Services ("USCIS") to adjudicate his Application for Naturalization

("Form N-400") and (ii) enjoining USCIS from employing the Controlled

Application Review and Resolution Program ("CARRP") in making that

adjudication.  Plaintiff's Complaint alleges violations of the Immigration and

Nationality Act ("INA"), 8 U.S.C. §§ 1101 to 1537; Congress's powers to

establish a uniform Rule of Naturalization, U.S. Const. art. I, § 8, cl. 4; the

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500 to 596; and Plaintiff's

Fifth Amendment right to due process, U.S. Const. am. V.  Plaintiff seeks declaratory, injunctive, and mandamus relief.

Plaintiff's Complaint originally named as Defendants, all in their official capacities, Gina Pastore, Brooklyn Field Office Director of USCIS; Susan Quintana, New York City Field Office Director of USCIS; Lee Bowes, Acting Field Office Director for the Northeast Region of USCIS; Ken Cuccinelli, former Acting Director of USCIS; Kevin McAleenan, former Secretary of the U.S. Department of Homeland Security; Christopher Wray, Director of the Federal Bureau of Investigation; and William Barr, former Attorney General.[1]  Now before the Court is Defendants' Motion to Dismiss the Complaint, in which Defendants argue that the Court lacks subject matter jurisdiction because (i) Plaintiff's claims have been mooted by USCIS's subsequent adjudication of his Form N-400; and (ii) Plaintiff must exhaust his administrative remedies before he can challenge USCIS's denial of his Form N-400.  For the reasons set forth below, the Court grants Defendants' motion in full.

BACKGROUND[2]

## A.    Plaintiff's Form I-485 and Form N-400 Applications

Plaintiff is a citizen of Egypt who first moved to the United States in 1998.  (Compl. ¶¶ 79-80).  He currently resides in Staten Island, New York.

---

[1]    The successors to several of the originally named defendants have been automatically substituted, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.  In particular, former Acting Director Ken Cuccinelli has been replaced by Acting Director Tracy Renaud; former Acting Secretary Kevin McAleenan has been replaced by Secretary Alejandro Mayorkas; and former Attorney General William Barr has been replaced by Attorney General Merrick B. Garland.

[2]    The facts in this Opinion are drawn from Plaintiff's Complaint ("Compl." (Dkt. #1)), which is the operative pleading in this case, as well as the exhibits appended to

(*See id.*, Signature Block).  In 2003, Plaintiff submitted a Form I-485 application to register as a permanent resident of the United States (*id.* at ¶ 84), which application was denied by USCIS on February 1, 2009 (*id.* at ¶ 101).[3]  Following protracted litigation in federal court and immigration court, Plaintiff's Form I-485 application was granted on August 15, 2013, on which date Plaintiff became a lawful resident of the United States.  (*Id.* at ¶¶ 111, 113-14).

On May 18, 2018, Plaintiff applied to become a naturalized citizen of the United States by filing a Form N-400 with USCIS.  (Compl. ¶¶ 2, 116).  When more than a year passed without the application being adjudicated, Plaintiff commenced this action on December 26, 2019.  (*See generally id.*).

On February 18, 2020, USCIS conducted an interview of Plaintiff in connection with his Form N-400 application.  (*See* Def. Br., Ex. A (Naturalization Interview Notice); *see also* Pl. Opp. 5).  USCIS issued a denial of

---

Defendants' Memorandum of Law in Support of Their Motion to Dismiss (Dkt. #45), and various other submissions, the latter of which are cited by their docket entry numbers. The decision on Plaintiff's Form N-400 application is referred to as the "Form N-400 Decision."  (Dkt. #45-2).

For ease of reference, the Court refers to Defendants' Memorandum of Law in Support of Their Motion to Dismiss as "Def. Br." (Dkt. #45); Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss as "Pl. Opp." (Dkt. #47); Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss as "Def. Reply" (Dkt. #49); and Plaintiff's Sur-Reply in Further Opposition to Defendants' Motion to Dismiss as "Pl. Reply" (Dkt. #51).

3       Plaintiff alleges that his application was denied at the direction of the Federal Bureau of Investigation (the "FBI"), and, indeed, that the FBI falsely represented that Plaintiff had failed to disclose both his relationship with the Muslim Brotherhood and a prior arrest in Egypt in 1981.  (Compl. ¶ 101).  More broadly, Plaintiff suggests that the denial of his application was part of a plan by the FBI to "make his life hell" after he declined to become an FBI informant.  (*Id.* at ¶¶ 84-87).  The factual background in this Opinion does not include the full details of Plaintiff's alleged dealings with the FBI, as the Court considers them irrelevant to the resolution of the instant motion.

Plaintiff's Form N-400 on August 31, 2020, finding that Plaintiff was not eligible for naturalization. (*See* Form N-400 Decision). In particular, USCIS determined that Plaintiff had failed to satisfy the residency and good moral character requirements of the INA. (*See generally id.* (referencing 8 U.S.C. § 1427)). In determining that Plaintiff had failed to meet the residency requirement, USCIS took notice of the fact that Plaintiff had resided in Morocco for a total of approximately 903 days between 2016 and the end of 2018. (*See id.* at 5-6). USCIS observed: "[w]hile it may be understandable to be overseas for some period of time … the sheer amount of time in question without further explanation, undermines your claim that you were not residing in Morocco for over two years during the required residency period." (*Id.* at 5). USCIS concluded that Plaintiff had not submitted sufficient documentation to establish that he met the statutory residency requirements. (*Id.* at 6).

Separately, with respect to the good moral character requirement, USCIS observed that Plaintiff had received a substantial settlement in 2014 that he failed to report as income on his 2014 tax return, and, further, that he had not provided any explanation for the omission. (Form N-400 Decision 6-7). From this, USCIS concluded that Plaintiff had not met his burden of establishing that he was a "person of good moral character." (*Id.* at 7).

On September 1, 2020, Plaintiff appealed USCIS's denial by filing a Request for a Hearing on a Decision in Naturalization Proceedings ("Form N-336"). (*See* Def. Br., Ex. C (Receipt Notice for Plaintiff's Form N-336)).

## B.   Plaintiff's CARRP Allegations

In his Complaint, Plaintiff alleges that his Form I-485 application was denied pursuant to an "undisclosed and unauthorized" USCIS program known as the Controlled Application Review and Resolution Program ("CARRP"). (Compl. ¶¶ 1, 101, 104).  He further alleges that CARRP caused USCIS's delays in resolving his Form N-400 application.  (*Id.* at ¶ 1).  Plaintiff characterizes CARRP as a program that enables USCIS to "surreptitiously blacklist[] thousands of applicants who are seeking immigration benefits" by "labeling them 'national security threats.'"  (*Id.*).  Worse yet, Plaintiff alleges that immigration officials rely upon CARRP to disregard "governing statutory criteria for certain classes of applicants," particularly applicants who either are or are perceived to be Muslim, and instead to apply "heightened, generally insurmountable criteria to anyone caught in CARRP's dragnet."  (*Id.*).  Plaintiff alleges that once USCIS identifies an applicant as raising a "CARRP-defined 'national security concern,'" that applicant is subject to rules and procedures that invariably lead USCIS either to deny the naturalization application or to delay adjudication for as long as possible.  (*Id.* at ¶ 58).

Plaintiff alleges that USCIS has identified him as a "potential national security concern," although he notes that USCIS has not expressly informed him of this determination.  (Compl. ¶ 10).  According to Plaintiff, while he meets the statutory criteria to become a naturalized citizen of the United States, USCIS has used CARRP to evaluate his applications pursuant to a higher standard.  (*Id.* at ¶ 2).  At the time Plaintiff filed his Complaint, he

believed that CARRP was preventing USCIS from moving forward with his Form N-400 application, and that CARRP would likely prompt USCIS to deny that application for "fabricated reasons."  (*Id.*).

## C.    Plaintiff's Commencement of the Litigation and Defendants' Motion to Dismiss

As noted above, Plaintiff commenced this action with the filing of his Complaint on December 26, 2019.  (Dkt. #1).  The Court proceeded to schedule an initial pretrial conference (Dkt. #21), but subsequently adjourned the conference twice, over Plaintiff's objections, to allow USCIS time to process Plaintiff's Form N-400.  (*See* Dkt. #23, 26).  On June 18, 2020, Plaintiff submitted a request that the Court conduct a hearing on his Form N-400 application pursuant to 8 U.S.C. § 1447(b).  (Dkt. #25).  Defendants opposed Plaintiff's request on June 26, 2020, observing that Plaintiff's action had not been brought pursuant to Section 1447(b).  (Dkt. #28).  On June 29, 2020, the Court denied Plaintiff's request on the grounds that such a hearing would be "premature" while Plaintiff's application remained pending before USCIS.  (Dkt. #29).

Following USCIS's August 31, 2020 denial of Plaintiff's application (*see* Form N-400 Decision), on September 2, 2020, Defendants filed a pre-motion letter seeking leave to dismiss the Complaint on the grounds of mootness and failure to exhaust Plaintiff's administrative remedies.  (Dkt. #33).  Plaintiff subsequently submitted a letter conveying his opposition to Defendants' pre-motion letter.  (Dkt. #36).

On September 11, 2020, the Court held a conference regarding Defendants' anticipated motion to dismiss. (*See* Dkt. #38 (transcript)). During the conference, the Court set an expedited briefing schedule on Defendants' motion to dismiss, at Plaintiff's request. (*Id.* at 30:10-31:11). The parties adhered to the briefing schedule, pursuant to which Defendants' motion to dismiss and supporting documents were filed on October 2, 2020 (Dkt. #44-45); Plaintiff's opposition brief and supporting documents were filed on October 9, 2020 (Dkt. #47-48),[4] and Defendants' reply brief was filed on October 16, 2020 (Dkt. #49). Plaintiff filed what the Court understands to be an unsolicited sur-reply on October 16, 2020. (Dkt. #51).[5]

---

[4]     Plaintiff's opposition brief is 68 pages, which well exceeds the 25-page limit set forth in this Court's Individual Rule 4.B. Additionally, in his opposition brief, Plaintiff argues that the Court should grant summary judgment in his favor pursuant to Rule 56 of the Federal Rules of Civil Procedure, despite not having applied for the Court's permission to seek summary judgment, as required by this Court's Individual Rule 4.A. The Court will review Plaintiff's arguments pursuant to Rule 12 of the Federal Rules of Civil Procedure, which is more favorable to him. Additionally, and in light of the special solicitude typically accorded to *pro se* litigants, *see Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000), the Court will consider the factual arguments advanced in Plaintiff's briefing along with those advanced in his pleadings. *See Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Reeves* v. *City of Yonkers*, No. 16 Civ. 2223 (KMK), 2017 WL 2275025, at *3 (S.D.N.Y. May 24, 2017) (explaining that a court may consider factual allegations and documents submitted with a *pro se* litigant's opposition papers).

[5]     Plaintiff did not receive permission to file a sur-reply, as required by this Court's Individual Rule 4.B. But again, mindful of its duty to extend special solicitude to *pro se* litigants, the Court has accepted and considered the sur-reply. *See Neary* v. *Weichert*, 489 F. Supp. 3d 55, 62-63 (E.D.N.Y. 2020) (denying motion to strike *pro se* plaintiff's sur-reply where it did not prejudice defendants), *appeal dismissed sub nom. Neary* v. *Pon*, No. 20-3584 (2d Cir. Apr. 15, 2021); *Dash* v. *Bank of Am. Corp.*, No. 18 Civ. 4807 (RWL), 2019 WL 1780140, at *3 n.9 (S.D.N.Y. Apr. 23, 2019) (accepting sur-reply of *pro se* litigant on motion to dismiss); *see also Kapiti* v. *Kelly*, No. 07 Civ. 3782 (RMB) (KNF), 2008 WL 754686, at *1 n.1 (S.D.N.Y. Mar. 12, 2008) ("[T]he decision to permit a litigant to submit a [sur-reply] is a matter left to the Court's discretion, since neither the Federal Rules of Civil Procedure nor the Local Civil Rules of [the] court authorize litigants to file [sur-replies]."), *report and recommendation adopted*, No. 07 Civ. 3782 (RMB) (KNF), 2008 WL 1882652 (S.D.N.Y. Apr. 28, 2008).

On November 15, 2020, Plaintiff submitted a letter requesting that the Court expedite its decision on the pending motion to dismiss. (Dkt. #56). In his letter, Plaintiff explained that he was almost 58 years old and wished to "marry a wife from overseas" and "then apply [for] her to join [him] in the States" as it would "take time … for a person [of his] age to have kids." (*Id.*). For this reason, Plaintiff indicated that he desired to expedite his naturalization proceedings to the extent possible. (*Id.*).

**D.      Plaintiff's Form N-336 Application and Related Motion Practice**

As noted above, Plaintiff filed his Form N-336 application on September 1, 2020. (*See* Def. Br., Ex. C). On February 3, 2021, Plaintiff filed a motion seeking a Court order directing USCIS to hold a hearing on his Form N-336 application within the 180-day statutory period for doing so. (Dkt. #57). Defendants submitted their opposition to Plaintiff's motion on February 17, 2021, on the grounds that (i) the motion was unripe at the time it was filed, as the 180-day period had not yet expired; and (ii) the motion was moot, as USCIS had scheduled Plaintiff's hearing for a date within the 180-day period. (Dkt. #58). Defendants explained that USCIS had recently scheduled Plaintiff's hearing for February 24, 2021, which date was 176 days after Plaintiff's filing of his Form N-336. (*Id.* at 4). On February 18, 2021, the Court denied Plaintiff's motion for the reasons raised in Defendants' briefing. (Dkt. #59). On March 4, 2021, Plaintiff submitted a motion reiterating his request that the Court decide Defendants' pending motion to dismiss. (Dkt. #62). In his submission, Plaintiff informed the Court that he had "purposefully and

intentionally" forgone his scheduled Form N-336 hearing, as he was "pretty sure without any doubt [that] USCIS lost the jurisdiction and the power to adjudicate his application." (*Id.* at 1). The Court has received no further updates on the status of Plaintiff's appeal.

### E.    Plaintiff's Subsequent Motion Practice

On March 8, 2021, Plaintiff filed a motion for the Court's recusal pursuant to Sections 144 and 455 of Title 28 of the United States Code. (Dkt. #63). Defendants submitted their opposition to Plaintiff's motion on March 23, 2021 (Dkt. #65), and Plaintiff submitted an unsolicited response the following day (Dkt. #66). The Court denied Plaintiff's motion on March 28, 2021. (Dkt. #67). On March 30, 2021, Plaintiff submitted a letter requesting permission to appeal the Court's decision on his motion for recusal, or in the alternative, that the Court expedite its ruling on the pending motion to dismiss. (Dkt. #68).[6]

### DISCUSSION

### A.    Applicable Law

### 1.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons* v. *Litton Loan*

---

[6]    Because the Court is granting Plaintiff's request to expedite its decision on Defendants' motion to dismiss with the issuance of the instant Opinion, it denies as moot Plaintiff's request to file an interlocutory appeal of the Court's decision on his motion for recusal.

*Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (internal quotation marks omitted) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions challenging subject matter jurisdiction: facial motions and fact-based motions. *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *see also Katz* v. *Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017). A facial Rule 12(b)(1) motion is one "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Carter*, 822 F.3d at 56. A plaintiff opposing such a motion bears "no evidentiary burden." *Id.* Instead, to resolve a facial Rule 12(b)(1) motion, a district court must "determine whether [the complaint and its exhibits] allege[ ] facts that" establish subject matter jurisdiction. *Id.* (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). And to make that determination, a court must accept the complaint's allegations as true "and draw[ ] all reasonable inferences in favor of the plaintiff." *Id.* at 57 (internal quotation marks omitted) (quoting *Lunney* v. *United States*, 319 F.3d 550, 554 (2d Cir. 2003)).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading." *Carter*, 822 F.3d at 57. "In opposition to such a motion, plaintiffs must 'come forward with evidence of their own to controvert that presented by the defendant,' or may instead 'rely on the allegations in the[ir p]leading if the evidence proffered by

the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing.'" *Katz*, 872 F.3d at 119 (alteration in original) (quoting *Carter*, 822 F.3d at 57).  If a defendant supports his fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a "district court will need to make findings of fact in aid of its decision as to subject matter jurisdiction."  *Carter*, 822 F.3d at 57.

### 2.    The Court's Review of *Pro Se* Submissions

In light of Plaintiff's *pro se* status, the Court "afford[s] [him] a special solicitude[,]" and, in this regard, will liberally construe his pleadings and motion papers.  *Tracy* v. *Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).  Under this directive, the Court is to read Plaintiff's "submissions to raise the strongest arguments they suggest."  *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks omitted)).

### 3.    The Naturalization Application Process

The Constitution grants Congress the power to establish a "uniform Rule of Naturalization."  U.S. Const., art. I, § 8, cl. 4.  Prior to October 1, 1991, applicants for citizenship applied for naturalization in federal district courts. *See Chan* v. *Ganter*, 464 F.3d 289, 290 (2d Cir. 2006).  Through the Immigration Act of 1990, Pub. L. No. 101-649, Title IV, 104 Stat. 4978 (1990), Congress placed "sole authority to naturalize persons as citizens of the United States [with] the Attorney General."  8 U.S.C. § 1421(a).

Under current federal regulations, the naturalization process requires the completion of several steps, including: (i) maintaining five years' lawful permanent residence, physical presence in the United States for at least half of that time, and continuous residence from the date of application until admission to citizenship, 8 U.S.C. § 1427(a), 8 C.F.R. § 316.2(a); (ii) submitting completed application materials to USCIS, including a Form N-400, 8 U.S.C. § 1445(a), 8 C.F.R. §§ 316.4, 334.1, 334.2; (iii) completing a background check, 8 U.S.C. § 1446(a), 8 C.F.R. §§ 316.10, 335.1; (iv) passing a test of English proficiency and of knowledge of the history and government of the United States, 8 U.S.C. § 1423(a), 8 C.F.R. §§ 312.1, 312.2; (v) being examined under oath by an immigration official, 8 U.S.C. § 1446(b), 8 C.F.R. §§ 316.14, 335.2, 335.3; and (vi) taking an oath of allegiance to the United States "in a public ceremony," 8 U.S.C. § 1448(a), 8 C.F.R. §§ 310.3, 337.1. *See Escaler* v. *U.S. Citizenship & Immigr. Servs.*, 582 F.3d 288, 289-90 (2d Cir. 2009); *see also Phillips* v. *Lynch*, No. 15 Civ. 1514 (DRH), 2016 WL 3248307, at *3 (E.D.N.Y. June 9, 2016) (explaining the naturalization application process).

However, if USCIS denies a naturalization application upon an initial determination, the applicant may request a Form N-336 hearing. *See* 8 U.S.C. § 1447(a); 8 C.F.R. §§ 316.14, 336.1, 336.2; *see also Phillips*, 2016 WL 3248307, at *4. This hearing serves as an administrative appeal of USCIS's initial determination, and it is conducted by an independent naturalization officer. 8 C.F.R. § 336.2(b). Following the Form N-336 hearing, the USCIS officer must issue a new decision that either "affirm[s] the findings and

12

determination of the original examining officer or [ ] re-determine[s] the original decision in whole or in part." *Id.*

Of potential significance to the instant motion, judicial review of the naturalization process is limited to two specific junctures. *First*, a district court may review a naturalization application if USCIS fails to make a determination on the Form N-400 within 120 days of the applicant's examination. *See* 8 U.S.C. § 1447(b). To initiate such a review, the applicant must file a petition for a hearing in the federal district court "for the district in which the applicant resides." *Id. Second*, if after the Form N-336 hearing, USCIS affirms its denial of a naturalization application, the applicant may seek judicial review of that denial, again in the district in which that applicant resides. 8 U.S.C. § 1421(c).

**B.    Analysis**

Defendants move to dismiss on the grounds that (i) Plaintiff's claims seeking adjudication of his Form N-400 have been mooted by USCIS's subsequent denial of his application; and (ii) Plaintiff must exhaust his administrative remedies before he may seek judicial review of USCIS's denial of his Form N-400. (*See generally* Def. Br.).

Plaintiff's opposition does not directly respond to Defendants' arguments regarding the Court's lack of subject matter jurisdiction. Instead, Plaintiff poses a number of questions regarding various perceived procedural errors by the Court over the course of this action, as well as regarding the scope of both USCIS's and the Court's jurisdiction. (Pl. Opp. 2-4). In particular, Plaintiff submits that his June 18, 2020 motion for a hearing pursuant to 8 U.S.C.

§ 1447(b) should have been construed as an amendment to his Complaint.  (*Id.* at 10-11 (referencing Dkt. #25)).  In this regard, Plaintiff argues that his June 18, 2020 motion was submitted following the conclusion of USCIS's 120-day period to adjudicate his Form N-400 application, upon the conclusion of which period Plaintiff was permitted to seek judicial review in the district in which he resided.  (*Id.* (referencing 28 U.S.C. § 1447(b))).  Plaintiff further argues that USCIS lost jurisdiction over his Form N-400 once he filed his June 18, 2020 motion.  (*Id.* at 11-12).  And Plaintiff submits that the Court should not merely deny Defendants' motion to dismiss, but that it should grant summary judgment in his favor.  (*Id.* at 27-66).[7]

The Court sympathizes with Plaintiff's evident exasperation with the naturalization process.  But for the reasons that follow, the Court agrees with Defendants that it lacks jurisdiction over both the claims alleged in Plaintiff's Complaint as well as Plaintiff's subsequent applications for further relief.

---

[7]     At the outset, the Court denies Plaintiff's application for summary judgment, even if construed as an application made under the more favorable standard of Rule 12 of the Federal Rules of Civil Procedure.  In their reply brief, Defendants correctly observe that the Court must resolve jurisdictional issues before it can consider the merits of this action.  (Def. Reply 3-4).  For the reasons discussed in this Opinion, the Court has determined that it lacks subject matter jurisdiction over Plaintiff's claims, and thus it cannot grant summary judgment in his favor.  *See Singh* v. *U.S. Citizenship & Immigr. Servs.*, No. 15 Civ. 1411 (JMF), 2016 WL 1267796, at *3 (S.D.N.Y. Mar. 30, 2016) ("Before reaching the merits of Singh's argument and addressing whether USCIS had jurisdiction to address his application for adjustment, the Court must address the question of whether it has jurisdiction over this suit."); *see also United States* v. *Assa Co. Ltd.*, 934 F.3d 185, 188 (2d Cir. 2019) ("[Federal district courts] may not adjudicate a case or controversy unless authorized by both Article III of the United States Constitution and a federal jurisdictional statute.").

### 1.    Plaintiff's Form N-400 Claims Are Dismissed as Moot

Plaintiff's Complaint asserts various claims under the INA, the Constitution, the APA, and the federal mandamus statute that are based upon an allegedly unreasonable delay in the adjudication of his Form N-400 application (the "Form N-400 Claims").  (Compl. ¶¶ 3, 133, 138, 142, 148, 153, 162).  Defendants respond that USCIS has provided Plaintiff with one form of relief sought in his Complaint — the adjudication of his Form N-400 — and that as such, his claims pertaining to such relief must be dismissed as moot. (Def. Br. 7-8).  The Court agrees.

### a.    Mootness

Issues of mootness are analyzed under Rule 12(b)(1), as they implicate the Court's subject matter jurisdiction.  *See Doyle* v. *Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) ("Under Article III of the U.S. Constitution, '[w]hen a case becomes moot, the federal courts lack subject matter jurisdiction over the action.'" (alteration in *Doyle*) (quoting *Fox* v. *Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994))).

Federal courts are courts of limited jurisdiction, "and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Platinum-Montaur Life Scis., LLC* v. *Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 616 (2d Cir. 2019) (internal quotation marks omitted) (quoting *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C.* v. *Dupont*, 565 F.3d 56, 62 (2d Cir. 2009)).  Article III of the Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies,'" thereby "restrict[ing] the authority of

federal courts to resolving 'the legal rights of litigants in actual controversies.'" *Genesis Healthcare Corp.* v. *Symczyk*, 569 U.S. 66, 71 (2013) (internal quotation marks omitted) (quoting *Valley Forge Christian Coll.* v. *Americans for Separation of Church and State, Inc.*, 454 U.S. 471 (1982)).  The "Case" and "Controversy" requirement places the burden on "those who invoke the power of a federal court to demonstrate standing — a 'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Already, LLC* v. *Nike, Inc.*, 568 U.S. 85, 90 (2013) (citation omitted).

A case ceases being a "Case" or "Controversy" — or, in other words, becomes moot — "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC*, 568 U.S. at 91.  Moreover, "a case that is 'live' at the outset may become moot 'when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury.'" *Cook* v. *Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993) (quoting *Alexander* v. *Yale Univ.*, 631 F.2d 178, 183 (2d Cir. 1980)).  This is the case "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit[.]" *Already, LLC*, 568 U.S. at 91.  However, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin* v. *Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox* v. *Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307-08 (2012)).  "The party seeking to have the case dismissed bears the burden of demonstrating

mootness[,] and that burden is a heavy one." *Chen-Oster* v. *Goldman, Sachs & Co.*, 251 F. Supp. 3d 579, 590 (S.D.N.Y. 2017) (internal brackets omitted) (quoting *Robinson* v. *Blank*, No. 11 Civ. 2480 (PAC) (DF), 2013 WL 2156040, at *13 (S.D.N.Y. May 20, 2013)).

### b.    Plaintiff's Form N-400 Claims No Longer Require Relief

"In the immigration and naturalization context, courts have dismissed cases as moot where the executive agency to which the plaintiff has applied grants the relief sought in the complaint prior to the court's adjudication." *Li* v. *Napolitano*, No. 08 Civ. 7353 (JGK), 2009 WL 2358621, at *3 (S.D.N.Y. July 30, 2009) (collecting cases).  Here, the primary form of relief sought in Plaintiff's Complaint was for this Court to "[c]ompel the Defendants and those acting under them … to schedule a naturalization interview and to adjudicate the Plaintiff's N-400 application without further delay."  (Compl., Prayer for Relief ¶ 5; *see also id.*, Prayer for Relief ¶ 2 (requesting an order directing Defendants "to schedule a naturalization interview and to adjudicate the Plaintiff's N-400 application")).  USCIS subsequently conducted Plaintiff's interview and denied Plaintiff's Form N-400.  (*See* Def. Br., Ex. A (Naturalization Interview Notice); Form N-400 Decision).  As such, this issue is no longer "live."  Plaintiff's claims pertaining to his Form N-400 application are moot because "the relief sought can no longer be given or is no longer needed." *Martin-Trigona* v. *Shiff*, 702 F.2d 380, 386 (2d Cir. 1983).

In the interest of completeness, the Court will briefly discuss the arguments raised in Plaintiff's opposition briefing.  Plaintiff appears to argue

17

that this action should not be dismissed as moot, inasmuch as he filed a request for a Section 1447(b) hearing prior to USCIS's adjudication of his application.  (Pl. Opp. 12-14).  In addition, Plaintiff argues that: (i) because at the time he filed his opposition brief, his Form N-336 application remained pending, his CARRP-related allegations were not moot (*id.* at 21-22); and (ii) the allegedly recurring nature of Defendants' conduct saves Plaintiff's claims from dismissal on mootness grounds (*id.* at 23-25).  The Court will address each argument in turn.

*First,* Plaintiff cites to the Second Circuit's decision in *Bustamante* v. *Napolitano*, 582 F.3d 403 (2d Cir. 2009), in support of the argument that his request for a Section 1447(b) hearing bars this case from dismissal on mootness grounds.  (*See* Pl. Opp. 12-14).  In *Bustamante*, the Second Circuit reversed a district court's dismissal of a Section 1447(b) action as moot following USCIS's adjudication of plaintiff's naturalization application.  582 F.3d at 404.  The Court reasoned that USCIS lost the power to adjudicate the application upon plaintiff's "properly filed Section 1447(b) petition."  *Id.*  Here, however, as discussed further below, Plaintiff has not properly filed a Section 1447(b) petition.  As such, *Bustamante* is inapposite and provides no basis for denying Defendants' motion.

*Second*, Plaintiff argues that even if his Form N-400 claims were mooted, his claims related to CARRP should survive dismissal.  (Pl. Opp. 22).  In support of this argument, Plaintiff observes in his opposition brief that his Form N-336 application remained pending at the time, and thus was subject to

USCIS's application of CARRP.  (*Id.*).  However, since the filing of Plaintiff's opposition briefing, his Form N-336 application for a rehearing was granted, and he opted not to attend the hearing.  (*See* Dkt. #62 at 1).  Thus, to the extent Plaintiff's CARRP-related claims could be construed to extend to his Form N-336 application, any such allegations have been mooted by the granting of his application for a rehearing.

*Third*, Plaintiff puts forth the related argument that his claims regarding the CARRP policy are not moot given the allegedly recurring nature of Defendants' conduct.  (Pl. Opp. 23-25).  In response, Defendants have emphasized that they are not seeking dismissal of Plaintiff's CARRP claims as moot, but rather that they are seeking dismissal of the CARRP claims on the basis that Plaintiff must exhaust his administrative remedies before he can assert such claims in federal court.  (Def. Reply 3 n.4).  The Court will thus address Plaintiff's CARRP claims in the following section, which concerns Defendants' arguments for dismissal on the basis of Plaintiff's failure to exhaust his administrative remedies.

In sum, the Court dismisses Plaintiff's Form N-400 Claims as moot.

## 2.    The Court Lacks Jurisdiction over Plaintiff's Remaining Claims

Plaintiff's remaining claims, brought under the INA, the Constitution, and the APA, argue the inappropriate denial of his naturalization application due to CARRP.  (Compl. ¶¶ 3, 133, 138, 142, 148, 153).  As previewed above, Defendants argue that these claims should be dismissed due to Plaintiff's failure to exhaust his administrative remedies.  (Def. Br. 8-12).  And although

19

Plaintiff's naturalization application has progressed since Defendants' motion was briefed, the Court agrees that Plaintiff still fails to demonstrate that he has met the INA's statutory exhaustion requirement.  Moreover, even had Plaintiff exhausted his administrative remedies, he is unable to seek judicial review in this District.  For these reasons, his remaining claims are dismissed.

### a.   The INA's Exhaustion Requirement

The rule of exhaustion provides that "a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself."  *Guitard* v. *U.S. Sec'y of Navy*, 967 F.2d 737, 740 (2d Cir. 1992).  Where exhaustion is required by statute, it is "mandatory, and courts are not free to dispense with [it]."  *Escaler*, 582 F.3d at 292 (alteration in *Escaler*) (quoting *Bastek* v. *Fed. Crop Ins. Co.*, 145 F.3d 90, 94 (2d Cir. 1998)).  Accordingly, "[i]f a party fails to exhaust administrative remedies, then the court may dismiss the action because subject matter jurisdiction does not exist."  *Gupta* v. *Headstrong, Inc.*, No. 12 Civ. 6652 (RA), 2013 WL 4710388, at *3 (S.D.N.Y. Aug. 30, 2013) (quoting *Howell* v. *I.N.S.*, 72 F.3d 288, 291 (2d Cir. 1995)).[8]

The Second Circuit has determined that the INA requires the exhaustion of administrative remedies before an applicant may seek judicial review of his

---

[8]   There are exceptions to this exhaustion requirement — "when: [i] available remedies provide no 'genuine opportunity for adequate relief'; [ii] irreparable injury may occur without immediate judicial relief; [iii] administrative appeal would be 'futile'; and [iv] in certain instances a plaintiff has raised a 'substantial constitutional question,'" *Guitard* v. *U.S. Sec'y of Navy*, 967 F.2d 737, 741 (2d Cir. 1992) (internal citation omitted) — but none applies here.  Moreover, the Second Circuit has held that where an exhaustion requirement is statutory, these "exceptions — including futility — [are] simply not

20

or her naturalization application.  *See Escaler*, 582 F.3d at 292.  And several courts in this District have dismissed complaints for lack of subject matter jurisdiction where a naturalization applicant failed to exhaust his or her administrative remedies.  *See, e.g.*, *Donnelly* v. *Controlled Application Review & Resolution Program Unit*, No. 19 Civ. 4932 (JPO), 2020 WL 7027617, at *3-4 (S.D.N.Y. Nov. 30, 2020); *Borromeo Escaler* v. *U.S. Citizenship & Immigr. Servs.* No. 03 Civ. 8418 (BSJ), 2007 WL 1975485, at *4 (S.D.N.Y. July 6, 2007), *aff'd*, 582 F.3d 288 (2d Cir. 2009); *Baez-Fernandez* v. *Immigr. & Naturalization Serv.*, 385 F. Supp. 2d 292, 294-95 (S.D.N.Y. 2005); *see also Santamaria* v. *Holder*, No. 11 Civ. 1267 (GBD) (JLC), 2012 WL 566073, at *6-7 (S.D.N.Y. Feb. 21, 2012), *report and recommendation adopted*, No. 11 Civ. 1267 (GBD) (JLC), 2012 WL 892180 (S.D.N.Y. Mar. 14, 2012).  Moreover, the Second Circuit has held that a plaintiff may not seek judicial review of either APA or constitutional claims until he or she has satisfied the INA's exhaustion requirement.  *Moya* v. *U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 126-27 (2d Cir. 2020).

### b.    Plaintiff Failed to Exhaust His Administrative Remedies

As noted above, federal courts have jurisdiction over a naturalization application where (i) USCIS fails to make a determination on the Form N-400 within 120 days of the applicant's interview, *see* 8 US.C. § 1447(b); and (ii) where USCIS has denied a Form N-400 application and that denial has been upheld in a Form N-336 hearing, *see* 8 U.S.C. § 1421(c).  At the time the

---

available."  *Theodoropoulos* v. *Immigr. & Naturalization Serv.*, 358 F.3d 162, 172 (2d Cir. 2004).

parties briefed Defendants' motion to dismiss, Plaintiff's request for a Form N-336 hearing remained pending.  As such, Defendants argued in their briefing that Plaintiff could not seek judicial review until USCIS completed its adjudication of his appeal.  (Def. Br. 11-12 (citing 8 U.S.C § 1421(c))).  Plaintiff did not directly respond to this argument in his opposition brief, but asserted that the requirement that he exhaust administrative remedies prior to seeking judicial review could postpone his naturalization by up to a decade.  (Pl. Opp. 25).

Subsequent to the parties' briefing on Defendants' motion, USCIS scheduled a hearing on Plaintiff's Form N-336, which hearing Plaintiff opted not to attend.  (*See* Dkt. #58 at 4; Dkt. #62 at 1).  The Court has received no further updates on Plaintiff's Form N-336 application.  Pursuant to Section 1421(c), a naturalization applicant may seek judicial review following the denial of his application after a hearing on his Form N-336 application "in the district in which [the applicant] resides."  8 U.S.C. § 1421(c).  Plaintiff here is unable to seek judicial review under this provision due to two separate deficiencies in his pleadings and submissions.  *First*, Plaintiff has not demonstrated that his application has been denied pursuant to a hearing on his Form N-336 application.  A such, he is unable to seek review of both his INA claim, as well as his APA and constitutional claims.  *See Moya*, 975 F.3d at 126-27.[9]  And

---

[9]     To the extent Plaintiff's Complaint can be construed to seek mandamus relief as to his CARRP-related claims (*see* Compl. ¶¶ 165-77), such relief is similarly dependent upon the exhaustion of his INA remedies.  *See Santamaria* v. *Holder*, No. 11 Civ. 1267 (GBD) (JLC), 2012 WL 892180, at *2 (S.D.N.Y. Mar. 14, 2012) ("Issuance of a writ of mandamus under 28 U.S.C. § 1361 is also dependent upon exhaustion of other

*second*, even had Plaintiff exhausted his administrative remedies, his recourse for judicial review would not arise in this District.  As a resident of Staten Island, located in Richmond County, Plaintiff is limited to seeking judicial review in the Eastern District of New York.  (*See* Compl., Signature Block).  *See* 28 U.S.C. § 112(c) (outlining the composition of the Eastern District of New York).  Thus, the Court would lack subject matter jurisdiction over this action even had Plaintiff demonstrated the adjudication of his Form N-336 application.

In his opposition briefing, Plaintiff argues that USCIS lost jurisdiction over his naturalization application upon its failure to adjudicate his Form N-400 application within 120 days of his interview.  (Pl. Opp. 11-12 (referencing 8 U.S.C. § 1447(b))).  Plaintiff argues that he was permitted to seek judicial review upon the conclusion of the 120-day period, and that he did so in the form of his June 18, 2020 request for a hearing pursuant to Section 1447(b).  (*Id.* at 10-11 (referencing Dkt. #25)).  Moreover, Plaintiff argues that this Court should have construed his June 18, 2020 request as an amendment to his Complaint.  (*Id.*).  In the first instance, even had Plaintiff's June 18, 2020 request for a hearing been properly submitted as an amendment to his Complaint, this Court would have lacked jurisdiction to adjudicate the request.  Under Section 1447(b), an applicant can only seek judicial review "in the

---

available remedies." (citing *Escaler* v. *U.S. Citizenship & Immigr. Servs.*, 582 F.3d 288, 292 (2d Cir. 2009))).  For this reason, Plaintiff's claim for mandamus relief also fails.  *See id.* (determining that plaintiff was not entitled to mandamus relief due to his failure to exhaust his administrative remedies under the INA).

district in which the applicant resides." 8 U.S.C. § 1447(b).  As noted above,
due to Plaintiff's residence in Staten Island, he was limited to pursuing a
Section 1447(b) hearing in the Eastern District of New York.  Because Plaintiff
did not submit a "properly filed Section 1447(b) petition," USCIS did not lose
jurisdiction over Plaintiff's naturalization application.  *Cf. Bustamante*, 582
F.3d at 404-05.

Plaintiff's sur-reply asserts that this District is the proper venue for this
action, and there is no need to either dismiss this action or to transfer it to the
Eastern District of New York.  (Pl. Reply 1-2).  He appears to argue that the
Court does have jurisdiction to hold a hearing under Section 1447(b), as
Defendants did not oppose his June 18, 2020 application on that basis, and
the Court denied the application on grounds of timing rather than jurisdiction
(*Id.* at 2 (referencing Dkt. #28, 29)).[10]  However, Plaintiff's views on this issue
appear to have evolved, as he has since requested that the Court transfer this
action to the Eastern District of New York.  (*See* Dkt. #63 at 11).  Although
Plaintiff has always had (and continues to have) the ability to pursue relief in
the Eastern District of New York, including a Section 1447(b) hearing, this
Court sees no basis for transferring this case, which does not encompass a
Section 1447(b) claim, and where Plaintiff has not demonstrated exhaustion of

---

[10]   Defendants' response to Plaintiff's hearing request focused on the procedural defects in
Plaintiff's application, rather than its jurisdictional defects.  (*See* Dkt. #28).  In
particular, Defendants observed that Plaintiff neither had nor could have brought this
action pursuant to Section 1447(b), as at the time he filed his Complaint, he had not
been interviewed in connection with his pending Form N-400.  (*See id.* at 1).

his administrative remedies.  The Court thus finds that it lacks jurisdiction over Plaintiff's remaining claims, which claims are accordingly dismissed.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss the Complaint is hereby GRANTED in full.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.  The Clerk of Court is further directed to mail a copy of this Opinion to Plaintiff at his address of record.

SO ORDERED.

Dated:      April 27, 2021
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge